UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JAVAD PEIROW-SALEHI,
    Plaintiff,
v.
NANCY A. BERRYHILL,
    Defendant.

Case No. 19-cv-03039-SVK

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 19

Javad Peirow-Salehi ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act. Dkt. 1. For the reasons discussed below, the Court remands this case for further proceedings.

## I. BACKGROUND

Plaintiff filed an application for SSI disability benefits, alleging disability beginning January 1, 2011. Dkt. 13 (Administrative Record ("AR")) 155-175. An Administrative Law Judge ("ALJ") held a hearing and issued an unfavorable decision on April 30, 2018. AR 17-25. The ALJ found that Plaintiff had the following severe impairments: back pain/lumbago/low back strain; anxiety/social anxiety disorder; and depression. AR 19. The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 21-22. The ALJ then determined that Plaintiff's residual functional capacity ("RFC") allowed him to perform medium work but limited him to only "frequent climbing of ladders, ropes or scaffolding, stooping, or crawling" and "simple repetitive tasks with non-public setting." AR 22. The ALJ concluded that Plaintiff was not disabled because he was capable of performing jobs that exist in the national economy, including those of a hand packager, night cleaner, and linen room attendant. AR 24-25.

After the Appeals Council denied review, Plaintiff sought review in this Court. Dkt. 1. In accordance with Civil Local Rule 16-5, the Parties filed cross-motions for summary judgment. Dkts. 16, 19. All Parties have consented to the jurisdiction of a magistrate judge. Dkts. 8, 10.

**II.     STANDARD OF REVIEW**

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Brown-Hunter,* 806 F.3d at 492. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations," and this threshold is "not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks, citation, and alteration omitted); *see also Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015) ("Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Rounds*, 807 F.3d at 1002 (internal quotation marks and citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id*.

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id*. The Court is "constrained to review the reasons the ALJ asserts." *Id*. (internal quotation marks

and citation omitted).

**III.    ISSUES FOR REVIEW**

       1.  Did the ALJ properly evaluate the medical evidence?

       2.  Did the ALJ properly evaluate Plaintiff's testimony?

       3.  Did the ALJ properly evaluate lay witness testimony?

       4.  Is the ALJ's Step Five finding supported by substantial evidence?

*See generally* Dkt. 16.

**IV.    DISCUSSION**

    **A. Issue One: Evaluation of Medical Evidence**

Plaintiff contends that the ALJ erred by: (1) improperly rejecting the opinions of two examining doctors, Dr. Timothy Ong and Dr. Robert Bilbrey; and (2) improperly rejecting "critical portions" of the opinions of two state agency physicians, Dr. Anna Franco and Dr. Richard Small. Dkt 16 at 8-12.

In social security disability cases, "[t]he ALJ must consider all medical opinion evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). "The opinion of an examining physician is . . . entitled to greater weight than the opinion of a nonexamining physician." *Ford v. Saul*, --- F.3d ---, 2020 WL 829864, at *8 (9th Cir. Feb. 20, 2020) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "If the opinion of an examining doctor is contradicted by another doctor, it 'can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Ford*, 2020 WL 829864, at *8 (quoting *Lester*, 81 F.3d at 830-31). "The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted). Additionally, "[w]hile an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions." *Ford,* 2020 WL 829864, at *8 (citations and internal quotation marks omitted).

However, "[w]here an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison v.*

*Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)). "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012-13 (citing *Nguyen*, 100 F.3d at 1464).

### 1. Dr. Timothy Ong

The ALJ gave the opinion of an examining physician, Dr. Ong, "no significant reliance" because his "short-term RFC restriction . . . to a semblance of semi-sedentary work . . . appears much more restrictive than can be correlated with objective medical signs and laboratory findings of a durational nature." AR 22. Because Dr. Ong's opinion is contradicted by at least one other opinion, the ALJ was required to set forth specific and legitimate reasons to properly reject the opinion.[1]

The ALJ articulated specific and legitimate reasons for rejecting Dr. Ong's opinion. First, the ALJ noted that Dr. Ong's opinion that Plaintiff could stand for two hours, walk for one hour, and sit for four hours in an eight-hour work day "was not medically explained by a single change at one disc level, in an X-Ray 4 years ago, and Dr. Ong did not find it necessary to send the claimant out for an updated spinal X-Ray." AR 22. Though Plaintiff argues that the ALJ improperly substituted his own lay opinion for that of Dr. Ong's by noting that Plaintiff's x-ray did not 'medically explain' the limitations in lifting, sitting, standing, and walking (Dkt. 16 at 9), the Court finds this unpersuasive. An ALJ may reject an examining physician's opinion if he finds it to be inadequately supported (*Thomas*, 278 F.3d at 957), which the ALJ found here.

The ALJ also noted that "the examination findings by the consultative internist [Dr. Sharma,] such as that the claimant maintained normal and full motor strength, grip strength, gait, reflexes, and sensation[,] are inconsistent with [Dr. Ong's] . . . restriction to semi-sedentary work." AR 22 (citing Exhibit 5F). Plaintiff contends that "while Dr. Sharma did find Plaintiff less limited

---

[1] Plaintiff argues the "clear and convincing" standard (Dkt. 16 at 10), but the Court finds that the "specific and legitimate" standard is proper. *Lester*, 81 F.3d at 830-31.

4

than Dr. Ong did, Dr. Sharma's evaluation of Plaintiff took place about a year and a half before Dr. Ong's examination, and Plaintiff's condition may well have worsened since then." Dkt. 16 at 9.

The Ninth Circuit addressed a similar issue in *Young v. Heckler,* 803 F.2d 963, 968 (9th Cir. 1986). In *Young*, the Court discussed what weight, if any, should be given to more recent medical records. *Id*. The claimant in *Young* argued that because of the progressive nature of his degenerative disc disease, the most recent medical report produced by his treating physician should have been afforded greater weight than all prior medical reports. *Id*. The Ninth Circuit opined that "[w]here a claimant's condition is progressively deteriorating, the most recent medical report is the most probative." *Id.* (citing *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). However, the Court noted that "it is far from clear that appellant's condition was progressively deteriorating," as the report in question noted that the claimant's condition was "improved." *Id*. Here, as in *Young*, there is no indication that Plaintiff's condition is, in fact, progressively deteriorating.

Plaintiff also argues that the "ALJ failed to address the number of absences Dr. Ong opined Plaintiff would have[,] did not pose this limitation in the hypothetical to the VE . . . . [and] failed to explain why this aspect of Dr. Ong's opinion was rejected." Dkt. 16 at 9. However, for the reasons stated above, the Court finds that the ALJ provided specific and legitimate reasons for discounting Dr. Ong's entire opinion. Accordingly, the ALJ's decision to give Dr. Ong's opinion "no significant reliance" was not erroneous.

### 2. Dr. Robert Bilbrey

Another examining physician, Dr. Bilbrey, performed a consultative examination of Plaintiff in April 2016. AR 380-82. The report indicates that Dr. Bilbrey reviewed a "[m]ultiple-page information form" and "[p]revious records" in preparation for his evaluation of Plaintiff. AR 380. Dr. Bilbrey opined that Plaintiff's mood was "somewhat dysphoric" but he "demonstrated no memory impairment during the interview." AR 381. Dr. Bilbrey further opined that Plaintiff "would have some difficulty interacting adequately with others as evidenced by his interaction with the examiner and clinic personnel." *Id*. He also opined that Plaintiff "would have

moderate difficulties concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or workweek [sic], or respond to changes in a routine work setting." *Id*. He further opined that Plaintiff could "follow one- and two- part instructions and can handle simple and complex tasks," but "would have moderate difficulty conforming to a schedule, [sic] with regular and punctual attendance." *Id*.

The ALJ afforded "some reliance" to Dr. Bilbrey's opinion but noted that it was "less than" the reliance he afforded to the "DDS evaluators" because Dr. Bilbrey "saw less medical evidence." AR 22. The ALJ's statement that Dr. Bilbrey "saw less medical evidence" does not sufficiently specify how the medical evidence Dr. Bilbrey saw was deficient as compared to the medical evidence seen by the "DDS evaluators." *See* AR 22. Additionally, Dr. Bilbrey stated that he reviewed a "[m]ultiple-page information form" and "[p]revious records" in preparation for his evaluation of Plaintiff (AR 380), which raises the question of what, if any, medical evidence was missing from Dr. Bilbrey's review. In sum, "[t]he ALJ must do more than state conclusions. He must . . . explain why [his own conclusions], rather than the doctors', are correct." *See Garrison*, 759 F.3d at 1012. Accordingly, the matter must be remanded for the ALJ to provide specific and legitimate reasons as to why Dr. Bilbrey's opinion was afforded less reliance than the opinions of the "DDS evaluators."

### 3. Dr. Anna Franco and Dr. Richard Small

The ALJ afforded the "assessments of the DDS evaluators" the "greatest reliance" because they were "supported by direct citation to the overall medical evidence as a whole." AR 22 (citing Exhibit 3A). Both Dr. Franco and Dr. Small opined as follows: "Simple 1-2 step work w/ non public contact; given NPSRTS, can sustain cpp for the usual day week and should be able to adapt accordingly." AR 66, 82. Plaintiff argues that the ALJ erred by omitting "critical aspects" of the opinions of Dr. Franco and Dr. Small from the RFC finding – namely, their opinions that Plaintiff be limited to "[s]imple, 1-2 step work." Dkt. 16 at 10-11 (citing AR 66, 77). Instead, the ALJ determined that Plaintiff should be restricted to "simple repetitive tasks." AR 22.

In *Rounds*, the Ninth Circuit identified a difference between a limitation to "simple one or two-step instructions" and a limitation to "simple, repetitive tasks." *Rounds*, 807 F.3d at 1002-03.

6

1    Thus, in omitting from the RFC the "1-2 step work" restriction set forth by Dr. Franco and Dr.
2    Small, the ALJ implicitly rejected that portion of both opinions without providing an explanation
3    for the omission. *Compare* AR 66, 82 *with* AR 22. The Commissioner concedes this error but
4    argues that any such error was harmless because "only two of the three identified jobs at step five
5    are reasoning level two positions." Dkt. 19 at 7. Plaintiff also acknowledges that "two of the
6    three jobs identified at step five . . . would be unsuitable for Plaintiff" because of the limitation to
7    1-2 step tasks," but argues that "[t]he VE did not address whether the one remaining job, night
8    cleaner,[2] exists by itself in significant numbers." Dkt. 16 at 11. However, the Vocational Expert
9    testified that "a conservation [sic] estimate" for the number of "night cleaner" jobs is
10   "approximately 100,000 in the nation." AR 52-53. As there was still one job that Plaintiff could
11   be suitable for under the proper "[s]imple, 1-2 step restriction," any error by the ALJ in this regard
12   was harmless.

### B. Issue Two: Evaluation of Plaintiff's Credibility

Plaintiff's second challenge is to the ALJ's assessment of his credibility. Dkt. 16 at 13. The ALJ found that the claimant's medically determinable impairments could reasonably be expected to produce his alleged symptoms, but "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 24. Plaintiff argues that the ALJ erred by failing to identify particular findings that were inconsistent with the functional deficits that Plaintiff described. Dkt. 16 at 13. He also argues that the ALJ failed to specify which testimony he found not credible and did not provide clear and convincing reasons to support his determination of Plaintiff's credibility. *Id*.

It is evident from the ALJ's decision that his evaluation of Plaintiff's credibility is tied to his evaluation of Dr. Bilbrey's opinion (AR 23), which the Court has concluded was erroneous. Under these circumstances, the ALJ must reassess Plaintiff's credibility based upon an appropriate

---

[2] The Dictionary of Occupational Titles ("DOT") states that the "cleaner" position has a reasoning level of 1, which requires an individual to "[a]pply commonsense understanding to carry out simple one- or two-step instructions." DOT No. 323.687-014, 1991 WL 672783 (2016).

7

evaluation of the medical evidence. *See Klee v. Berryhill*, No. 17-cv-00697-DMR, 2018 WL 3956337, at *17 (N.D. Cal. Aug. 17, 2018).

### C. Issue Three: Evaluation of Lay Witness Credibility

Plaintiff's father submitted a third-party function report dated February 10, 2016. AR 220-27. In the report, Plaintiff's father notes that Plaintiff has "many menthol [sic] and body problems." AR 220. He also notes that Plaintiff's ability to lift, bend, stand, reach, walk, sit, talk, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and get along with others is affected by his condition(s). AR 225. He opines that Plaintiff can walk for fifteen minutes before needing to rest for fifteen minutes and that Plaintiff can only pay attention for a few seconds. *Id*.

The ALJ noted that he "carefully and fully considered the totality of this lay (or non-medical) third party function report, but because its suggested subjective limitations are not correlated by objective medical signs and laboratory findings of a longitudinal nature, they have been accorded no significant reliance." AR 23-24. The ALJ noted that the function report "copies the claimant's own function reports so obviously that he misspells the word mental as 'menthol' as the claimant had done." AR 23. He also notes that "[l]ike the claimant, the claimant's father endorses extreme limitations" in Plaintiff's ability to walk and pay attention. *Id*.

Plaintiff argues that the ALJ erred in rejecting the lay witness testimony of his father. Dkt. 16 at 14-15. "[L]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Tobeler v. Colvin*, 749 F.3d 830, 832 (9th Cir. 2014) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006)). "[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make." *Tobeler*, 749 F.3d at 833 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). But "lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without comment." *Id*. at 834 (citations and internal quotation marks omitted).

8

Here, the ALJ properly supported his decision to give "no significant reliance" to Plaintiff's father's report by providing reasons that were germane to Plaintiff's father. The ALJ described Plaintiff's father's statements and concluded that its suggested limitations were not supported by the medical evidence. AR 24. Accordingly, the ALJ properly discounted Plaintiff's father's testimony.

### D. Issue Four: Step Five Finding

Plaintiff's final challenge is to the ALJ's Step Five finding. Plaintiff argues that the ALJ improperly omitted the following from the vocational hypothetical: (1) Plaintiff's credible allegations; (2) the limitations assessed by Dr. Ong, Dr. Bilbrey, Dr. Franco, and Dr. Small; and (3) the limitations described by Plaintiff's father. Dkt. 16 at 15. An ALJ may meet his burden under Step 5 by propounding a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations to a vocational expert. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). A hypothetical that fails to take a claimant's limitations into account is defective. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 690 (9th Cir. 2009).

The hypotheticals posed to the vocational expert depend on what limitations the claimant has, which in turn depend on a correct evaluation of a complete medical record. As the Court has directed the ALJ to reassess his evaluation of Dr. Bilbrey's opinion and of Plaintiff's credibility, the ALJ must also consider whether the hypothetical posed to the vocational expert needs to be revised to correctly reflect Plaintiff's limitations and restrictions in light of the errors identified above.

### V. DISPOSITION

The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be

1  resolved before a disability determination can be made, and it is not clear from the record that the
2  ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."
3  *Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018) (citations omitted).

4  Because it is not clear from the record that the ALJ would be required to find Plaintiff
5  disabled if Dr. Bilbrey's opinion, Plaintiff's testimony, and the Step Five finding were properly
6  evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the medical
7  evidence, Plaintiff's credibility, and his Step Five finding in light of Dr. Bilbrey's opinion.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion for summary judgment, **DENIES** the Commissioner's cross-motion for summary judgment, and **REMANDS** this case for further proceedings.

**SO ORDERED.**

Dated: February 28, 2020

_____
SUSAN VAN KEULEN
United States Magistrate Judge